IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA S. McLAREN, CNM,            )
                                   )  Civil Action
            Plaintiff              )  No. 10-cv-04224
                                   )
       vs.                         )
                                   )
AIG DOMESTIC CLAIMS, INC.,         )
                                   )
            Defendant              )

                    *     *     *

APPEARANCES:
        SUSAN ELLIS WILD, ESQUIRE
        SAMUEL EZRA COHEN, ESQUIRE
            On behalf of Plaintiff

        JOEL MAX EADS, ESQUIRE
            On behalf of Defendant

                    *     *     *

                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Defendant AIG

Domestic Claims, Inc.'s Motion to Dismiss Pursuant to Federal

Rule of Civil Procedure 12(b)(6), which motion was filed on

November 30, 2010, together with the Brief of Defendant AIG

Domestic Claims, Inc. in Support of Motion to Dismiss Pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Defendant's motion to

dismiss and brief in support were reinstated on March 14, 2011.[1]

---

[1]    See Order of the undersigned dated March 14, 2011.

On December 21, 2010, the Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.'s Motion to Dismiss Pursuant to F.R.C.P. 12(b)6) was filed. Plaintiff's brief was reinstated March 14, 2011.

On January 14, 2011, the Reply Brief of Defendant AIG Domestic Claims, Inc. in Further Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) was filed. Defendant's reply brief was reinstated on March 14, 2011.  Hence this Opinion.

<u>SUMMARY OF DECISION</u>

For the following reasons, I grant defendant's motion to dismiss plaintiff's plaintiff's bad faith claim in Count I and breach of contract claim in Count II.  Because I grant defendant's motion to dismiss with respect to both counts in plaintiff's Second Amended Complaint, plaintiff's Second Amended Complaint is dismissed with prejudice.[2]

---

[2]     Plaintiff's brief in opposition to AIG's instant motion to dismiss does not include a request for leave to file a third amended complaint in the event that the motion to dismiss is granted.

However, the United States Court of Appeals for the Third Circuit has held that even where a plaintiff has not sought leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  Here, I dismiss plaintiff's Second Amended Complaint with prejudice because it appears that further amendment of plaintiff's pleading would be futile.

When I granted plaintiff leave to file a second amended complaint, it was for the limited purpose of amending her pleading to properly allege the grounds on which the court's jurisdiction rests.  I recognize that plaintiff did not have the opportunity, when crafting her Second Amended Complaint,

(<u>Footnote 2 continued:</u>)

JURISDICTION

Jurisdiction in this case is based upon diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to plaintiff's claims allegedly occurred in Lehigh County, Pennsylvania, which is located within this judicial district.

PROCEDURAL HISTORY

Plaintiff Andrea S. McLaren, CNM instituted this action by filing her Complaint on August 20, 2010.  Defendant AIG

_____

(Continuation of footnote 2:)

to make curative amendments concerning the substance of her bad faith and breach of contract claims as plead in her Amended Complaint.

However, AIG previously filed a motion to dismiss the Complaint originally filed by plaintiff which initiated this action.  AIG's motion to dismiss the Complaint raised the same objections to plaintiff's bad faith and breach of contract claims which are raised by AIG's instant motion to dismiss the Second Amended Complaint.  Compare Brief of Defendant AIG Domestic Claims, Inc.'s in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at pages 3-6 (Document 4), with Brief of Defendant AIG Domestic Claims, Inc.'s in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at pages 5-9 (Document 9-1).

I did not rule on AIG's October 26, 2010 motion to dismiss because Plaintiff McLaren filed her Amended Complaint on November 16, 2010, thereby rendering the motion moot.  Nonetheless, the fact remains that plaintiff, in preparing her Amended Complaint, was on notice of, and had an opportunity to craft her pleading so as to address, the alleged deficiencies and legal argument raised by AIG in its first motion to dismiss.

Plaintiff has already had an opportunity to amend her pleading in response to the challenges raised by AIG in its pending motion to dismiss. Therefore, I find that an additional opportunity to amend plaintiff's complaint in response to those same challenges, upon which AIG ultimately prevailed, would be futile.

Domestic Claims, Inc. ("AIG") filed a motion to dismiss the Complaint on October 26, 2010.[3]

On November 11, 2010, Ms. McLaren filed her Amended Complaint.  AIG filed a motion to dismiss plaintiff's Amended Complaint on November 30, 2010.  Ms. McLaren filed her brief in opposition to AIG's motion to dismiss the amended complaint on December 21, 2010.  AIG filed its reply brief in support of its motion to dismiss the amended complaint on January 14, 2011.

On February 14, 2011, based upon deficiencies in the jurisdictional averments in plaintiff's Amended Complaint, I issued an Order granting plaintiff until March 4, 2011 to file a second amended pleading for the limited purpose of remedying the deficiencies identified by that Order.  The Order granting Plaintiff McLaren leave to file a second amended complaint also dismissed AIG's then-pending motion to dismiss the Amended Complaint without prejudice to seek reinstatement of the motion to dismiss if plaintiff filed a second amended complaint establishing subject matter jurisdiction.[4]

---

[3]     AIG's motion to dismiss plaintiff's original complaint was dismissed as moot by my Order dated December 15, 2010.

[4]     My Order dated February 10, 2011 noted that it was the sense of that order that if plaintiff established jurisdiction by filing a second amended complaint, disposition of defendants motion to dismiss, if reinstated, would require no further briefing.

On March 1, 2011, plaintiff filed her Second Amended Complaint, which properly plead subject matter jurisdiction based on diversity of citizenship.  AIG moved reinstate its November 30, 2011 motion to dismiss on March 10, 2011.

On March 14, 2011, I issued an Order reinstating AIG's motion to dismiss and the parties' earlier briefing on that motion.  Upon reinstatement of AIG's motion to dismiss and brief in support, Plaintiff McLaren's brief in opposition, and AIG's reply brief in support of dismissal, AIG's motion to dismiss Plaintiff McLaren's Second Amended Complaint became ripe for disposition.  Hence this Opinion.

<u>STANDARD OF REVIEW</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (<u>abrogated in other respects by Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[5]

In determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." Fowler, 578 F.3d at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely

---

[5]     The Opinion of the United States Supreme Court in Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in Twombly applies to all civil suits in the federal courts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and that the plaintiff is entitled to relief.  Fowler, 578 F.3d at 210 (quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).  As the Supreme Court explained in Iqbal, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully." Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

that the plaintiff can prove those facts or will ultimately prevail on the merits."  Phillips, 515 F.3d at 231.  Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, __ U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal,

__ U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885
(internal quotations omitted).

A well-pleaded complaint may not be dismissed simply
because "it strikes a savvy judge that actual proof of those
facts is improbable, and that a recovery is very remote and
unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965,
167 L.Ed.2d at 940-941.

FACTS

Based upon the averments in plaintiff's Second Amended
Complaint, which I must accept as true under the foregoing
standard of review when considering a motion to dismiss, the
pertinent facts are as follows.

Plaintiff Andrea S. McLaren is a certified nurse
midwife ("CNM").  Ms. McLaren is a citizen of Pennsylvania and
resides in Stroudsburg, Pennsylvania.[6]

Defendant AIG Domestic Claims, Inc. ("AIG") is a
Delaware corporation with its principle place of business in
Jersey City, New Jersey.[7]  AIG is a wholly-owned subsidiary of
the National Union Fire Insurance Company of Pittsburgh, PA
("National Union").[8]

---

[6]      Second Amended Complaint at ¶¶ 1, 6.

[7]      Id. at ¶ 2.

[8]      Id. at ¶ 13.

Plaintiff avers that AIG acts on behalf of National Union when claims are filed against National Union's insureds, and that AIG is National Union's "agent, subsidiary, or alter ego."[9]

Specifically, Ms. McLaren avers that AIG is responsible for assigning defense counsel for National Union's insureds when a claim covered by a National Union policy is brought against the insured, and for otherwise administering and evaluating all such claims.  Plaintiff avers that AIG has the authority to negotiate all settlements of claims under National Union policies, including the Policy at issue.[10]

## Plaintiff McLaren's Insurance Policy

In April 2004, Ms. McLaren's former insurer stopped writing medical malpractice insurance, so she sought new professional liability coverage.[11]  In July 2004, Ms. McLaren submitted an application for insurance coverage on a pre-printed form she obtained from the American College of Nurse Midwifes ("ACNM").  The name "National Union Fire Insurance Company of Pittsburgh, PA" appeared at the top of the application form.[12]

---

[9]     Second Amended Complaint at ¶ 15.

[10]    Id.

[11]    Id. at ¶ 7.

[12]    Id. at ¶ 8.

After submitting that application form, plaintiff McLaren received a "Certificate of Liability Insurance" from Contemporary Insurance Services, an ACNM-sponsored insurance broker.[13]

The insurance policy issued pursuant to Ms. McLaren' application was written by National Union.  Pursuant to the Policy, National Union provided professional liability insurance to plaintiff McLaren in exchange for her payment of annual premiums of $9,427 and $13,344 for the 2004-2005 and 2005-2006 policy years, respectively.[14]

<u>The Miller Litigation</u>

On February 27, 2006 Tracy and Daryle Miller filed a civil action against Andrea S. McLaren and St. Luke's Hospital of Bethlehem in the Court of Common Pleas of Lehigh County, Pennsylvania.  The Millers alleged negligence by Ms. McLaren and St. Luke's Hospital and sought damages for the death of their son, Jacob Miller, who died in August 2004.

Upon receipt of the lawsuit, Ms. McLaren notified her insurance broker, Contemporary Insurance Services, which in turn forwarded the lawsuit to AIG.  Ms. McLaren received acknowledgment from AIG that the Miller's lawsuit had been received, the claims asserted by the Millers fell within the

---

[13]    Second Amended Complaint at ¶ 9

[14]    <u>Id</u>. at ¶ 10.

coverage parameters of the policy, and defense counsel would be appointed by AIG to represent her.[15]

From that point forward, all of Ms. McLaren's dealings with her insurer went through her defense counsel, who was appointed by AIG.[16]

Throughout the Miller litigation, Ms. McLaren took, and stood by, the position that she had not acted negligently with respect to Jacob Miller. Ms. McLaren wanted, and intended to, mount a full defense in the Miller litigation. Ms. McLaren's defense counsel assured her that the case would be defended and that AIG fully supported her desire to defend against the Millers' claims.[17]

Ms. McLaren was committed to fully defending against the Millers' claims both because she was confident that she had appropriately cared for Tracy Miller and Jacob Miller, and because she was concerned about the professional implications of any settlement in the case being listed with the National Practitioner Databank.[18]

---

[15]    Second Amended Complaint at ¶ 17.

[16]    Id. at ¶ 18.

[17]    Id. at ¶ 19.

[18]    Id. at ¶ 22.

The trial in the Miller litigation lasted four weeks and ultimately resulted in a mistrial because of the jury's inability to reach a verdict on the issue of liability.  During the course of the trial, counsel for the Millers made overtures for settlement, and such overtures were encouraged by the presiding trial judge.   However, Ms. McLaren resisted these overtures and repeatedly informed her counsel that she wanted to see the case through to a jury verdict.[19]

Ms. McLaren avers that, during the second week of trial, counsel for the Millers made a settlement proposal to Ms. McLaren's attorney.  The Millers' counsel proposed that if (1) Ms. McLaren would give her consent to AIG to settle the matter and (2) AIG would tender the basic policy limit of $500,000.00 to the Medical Care Availability and Reduction of Error ("MCARE") Fund, then (1) the Millers would withdraw their punitive damages claim, (2) limit their compensatory damages claims to the amount of Ms. McLaren's total available insurance coverage, (3) protect her from any claim for damages in excess of this total insurance coverage, and (4) decline to assert any direct claim against AIG.[20]

Ms. McLaren avers that after this proposal was made by the Millers' counsel, AIG coerced her signing a "consent to

---

[19]   Second Amended Complaint at ¶¶ 20-21.

[20]   Id. at ¶ 23.

settle" form granting AIG authority to settle the claim for the limits of her policy, $500,000.00 paid to the MCARE Fund. Specifically, Ms. McLaren alleges that this coercion occurred when her attorney placed a "consent to settle" form together with a Praecipe to Withdraw as Counsel in front of Ms. McLaren and told her that the Praecipe to Withdraw as Counsel would be filed if she did not sign the "consent to settle" form.[21]

Ms. McLaren avers that AIG, MCARE, and St. Luke's Hospital commenced settlement negotiations with the Millers, which continued throughout the remainder of the trial.  The parties were unable to reach a settlement before the mistrial was declared after the jury deadlocked on the issue of liability.[22]

## Post-Trial Settlement Talks

After the mistrial, Ms. McLaren contacted her defense counsel and expressed concern over having been pressured to sign the "consent to settle" form.  She further informed her defense counsel that she was no longer willing to consent to settlement because the jury's deadlock on the issue of liability reaffirmed her belief that she had not acted negligently.

The trial judge scheduled a post-trial settlement conference to convene August 25, 2008.  Ms. McLaren's trial counsel represented her at the post-trial settlement conference

---

[21]     Second Amended Complaint at ¶ 24.

[22]     Id. at ¶ 26.

and informed the court and the other parties' counsel that
Ms. McLaren wished to withdraw her consent for AIG to settle the
Millers' claims.

Nevertheless, at that conference, a global settlement
offer was made by AIG, MCARE, and St. Luke's Hospital to settle
the Miller's claims for $900,000.00.  The offer was to remain
open only until August 26, 2008 at 1:00 o'clock p.m.[23]

The offer included the $500,000.00 policy limits of
Ms. McLaren's policy despite Ms. McLaren having advised her
defense counsel that she had withdrawn her consent to any
settlement.[24]

At approximately 6:00 o'clock p.m. on August 25, 2008,
and prior to any purported acceptance by the Millers of the
global settlement offer, Ms. McLaren's personal legal counsel
formally notified AIG and Ms. McLaren's trial counsel that
Ms. McLaren had revoked any consent to settle the Millers'
claims.[25]

AIG subsequently refused to tender the $500,000 limit
of Ms. McLaren's policy to the MCARE Fund, thereby preventing the
global settlement from being consummated.  The Millers petitioned
the trial court to enforce the settlement based on the global

---

[23]    Second Amended Complaint at ¶¶ 28-29.

[24]    Id. at ¶ 29.

[25]    Id. at ¶ 31.

settlement offer of August 25, 2008 and the Millers' purported acceptance of the global offer.[26]

On December 24, 2008, the Pennsylvania state trial court issued an order granting the Millers' petition to enforce the global settlement.  Ms. McLaren contends that the settlement was enforced erroneously because her initial consent was allegedly coerced and her subsequent attempts to effectively withdraw that initial consent were ignored.[27]

On June 5, 2009, the settlement in the Miller litigation was posted on the National Practitioner Data Bank. Ms. McLaren avers that the posting of the settlement has forever damaged her professional reputation and has exposed her to damages.[28]

Ms. McLaren alleges that at all times pertinent to the Miller litigation, she understood and believed that AIG was her malpractice insurance carrier.[29]

---

[26]     Second Amended Complaint at ¶ 32.

[27]     Id. at ¶ 33.

[28]     Id. at ¶ 34.

[29]     Id. at ¶ 35.  Plaintiff attached, as Exhibit D to her Second Amended Complaint, the Order and Opinion of Senior Judge Alan M. Black of the Court of Common Pleas of Lehigh County, which granted the Millers' motion to enforce the global settlement offer of $900,000.

I note that Judge Black, at the outset of his Opinion, stated:

> National Union Fire Insurance Company of Pittsburgh, Pa., was permitted to intervene in this proceeding based on its representation that it had issued McLaren's basic liability

(Footnote 29 continued):

- 15 -

<u>COMPLAINT</u>

Ms. McLaren's Second Amended Complaint against AIG contains two counts: Count I is labeled "Bad Faith"; Count II is labeled "Breach of Contract".

<u>Count I – Bad Faith</u>

Ms. McLaren alleges that, pursuant to her insurance policy, AIG was not authorized to settle any claims on her behalf without her express consent.  Ms. McLaren alleges that her initial consent to settle was obtained under duress.  She alleges further that: (1) AIG had a duty to defend her, (2) AIG was obligated to act in her best interest; (3) AIG owed her a fiduciary duty and a duty to put her interests ahead of its own; and (4) AIG owed her a duty of good faith and fair dealing.[30]

In support of her bad faith claim, Ms. McLaren further contends that there was no reasonable basis for AIG to insist on

---

(<u>Footnote 29 continued</u>):

insurance policy and that AIG had been acting on its behalf in defending the case and engaging in settlement negotiations.  Accordingly, all references to AIG in this Opinion shall also include the Intervenor [National Union], unless otherwise specified.

Second Amended Complaint, Exhibit D, at page 2.

Judge Black's statement that AIG was acting on behalf of National Union in defending McLaren in the Miller litigation and engaging in settlement negotiations does provide support for plaintiff's claim that an agency relationship existed between AIG, as agent, and National Union, as principal. However, as discussed in this Opinion, McLaren's averments in the Second Amended Complaint and the attached exhibits nonetheless fail to support a reasonable inference that AIG was McLaren's "insurer" under Section 8371, or that AIG is National Union's alter ego and therefore a party to insurance contract between McLaren and National Union.

[30]     Second Amended Complaint at ¶¶ 41-44.

- 16 -

Ms. McLaren's consent to settle the Millers' claims against her because "National Union and AIG faced no additional exposure, beyond $500,000, whether the Miller litigation settled, or went to verdict."[31]

Ms. McLaren further alleges that AIG knew or recklessly disregarded the fact that there was no reasonable basis to settle for the $500,000 policy limit.  Ms. McLaren avers that AIG's insistence on her granting consent to settle constituted bad faith and caused her professional reputation to be forever tarnished.[32]

Count I of plaintiff's Second Amended Complaint does not expressly state that she asserts her bad faith claim against AIG under 42 Pa.C.S.A. § 8371.  However, plaintiff's brief in opposition to AIG's motion to dismiss confirms that Count I alleges bad faith by AIG as Ms. McLaren's "insurer" pursuant to Section 8371.[33]

<u>Count II - Breach of Contract</u>

After incorporating the previous paragraphs by reference, Ms. McLaren avers that, in accordance with her insurance policy, AIG had a duty to defend her for any claims

---

[31]   Second Amended Complaint at ¶¶ 45-46.

[32]   <u>Id</u>. at ¶¶ 47-51.

[33]   Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 10.

brought against her within the scope of the policy's coverage. Ms. McLaren alleges that the Miller litigation was within the scope of the policy's coverage.

Ms. McLaren contends that AIG breached its contractual duty to defend her by coercing her to sign the "consent to settle" form during the Miller litigation.  Further, Ms. McLaren avers that AIG was not permitted to settle the Miller's claims without her express consent and that "[i]n tendering McLaren's Policy limits to MCARE, after securing McLaren's 'consent to settle' under duress, AIG breached its obligation not to settle claims on McLaren's behalf without her express consent, inasmuch as her 'consent' could not possibly be construed as voluntary or meaningful."[34]

Ms. McLaren's insurance contract with National Union is the only contract specifically referred to in Count II or in the Second Amended Complaint as a whole.[35]  Ms. McLaren does not allege the existence of any separate contract between herself and AIG.  Instead, Ms. McLaren's argues that AIG is the alter ego of

_____

[34]     Second Amended Complaint at ¶ 57.  This averment appears at odds with Ms. McLaren's averment, earlier in her complaint, that the global settlement was not voluntarily consummated and required an order of the trial judge because AIG refused to tender the $500,000 policy limit to the MCARE Fund on August 25, 2008 upon being formally notified by Ms. McLaren's personal counsel, that she had withdrawn any consent to settle the Millers' claims. Compare id. at ¶ 57, with id. at ¶¶ 31-32.

[35]     See Second Amended Complaint at ¶¶ 52-58; Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at pages 11-12.

National United and is, therefore, liable to Ms. McLaren under the insurance contract between Ms. McLaren and National United.

<u>DISCUSSION</u>

<u>Alter Ego/De Facto Insurer Allegations</u>

AIG argues that plaintiff's allegations that AIG is the "alter ego" of National Union and a "de facto insurer" should be disregarded as legal conclusions without factual support.[36]

Ms. McLaren responds that the Second Amended Complaint "alleges facts sufficient to sustain a claim that AIG was the alter ego of National Union, had an agency relationship with National Union, and/or was McLaren's de facto insurer."[37]

Specifically, in support of her alter ego and de facto insurer contentions, plaintiff avers that: (1) she had no direct communications with either National Union or AIG until the commencement of the underlying Miller litigation; (2) upon receipt of the lawsuit, Ms. McLaren notified her insurance broker, who forwarded the lawsuit to AIG; and (3) AIG contacted Ms. McLaren to acknowledge receipt of the lawsuit and inform her

---

[36]     Brief of Defendant AIG Domestic Claims, Inc. In Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at page 4.

[37]     Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 8.

that the suit fell within her insurance policy's coverage
parameters.[38]

Moreover, Ms. McLaren contends that "[a]t all relevant
times...AIG engaged in a course of conduct in which it operated
as McLaren's insurer in all respects":

> AIG acknowledged receipt of the lawsuit and
> advised McLaren that it would appoint defense
> counsel on her behalf; AIG directed defense
> counsel's activities on behalf of McLaren and
> required defense counsel to report to AIG all
> activities undertaken in defense of the claim;
> through its appointed defense counsel, AIG
> communicated with McLaren throughout the pretrial
> phase of the Miller litigation; through its
> appointed defense counsel, AIG advised McLaren
> that her defense would be withdrawn if she did not
> consent to settle the Miller litigation, and that
> McLaren would have to bear the expense of finding
> her continued defense; AIG responded to  communi-
> cations from McLaren's personal counsel following
> the settlement conference which led to the
> eventual settlement of the case, and further, AIG
> directly communicated with McLaren about those
> communications from personal counsel (which had
> called for the cessation of settlement activities
> since McLaren had withdrawn her consent to
> settle), and further, AIG directly informed
> McLaren that if the settlement was not
> consummated, AIG would withdraw her defense, and
> all future legal expenses would be her own to
> bear.[39]

However, Ms. McLaren does not explain how, or cite
authority establishing that, these averments are sufficient to

---

[38]     Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to
Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P.
12(b)(6) at page 8-9 (citing Second Amended Complaint at ¶¶ 8-9, 14, and 17).

[39]     Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to
Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P.
12(b)(6) at page 9 (quoting Second Amended Complaint at ¶ 35).

establish the legal claim that AIG is the alter ego of National Union, or that AIG is Ms. McLaren's de facto insurer and therefore an insurer under section 8371.[40]

With respect to plaintiff's alter ego assertion, her Second Amended Complaint avers that "[u]pon information and belief, AIG is a wholly-owned subsidiary of Nation Union Fire Insurance Company."[41]

Under an "alter ego" theory, a court may properly disregard the separate corporate identities of two entities when the corporation or person in control of another organization uses that control, or uses the corporate assets, to further his or her or its own interests. Partners Coffee Company, LLC. v. Oceana Servies and Products Company, 700 F.Supp.2d 720, 737 (W.D.Pa. 2010)(Standish, J.).

The United States Court of Appeals for the Third Circuit has stated that Pennsylvania does not allow recovery unless the party seeking to pierce the corporate veil on an alter ego theory establishes that "the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." Eastern Minerals & Chemicals Co. v. Mahan,

---

[40]     See Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 8-9.

[41]     Second Amended Complaint at ¶ 13.

225 F.3d 330, 333 n.6 (3d Cir. 2000).  In other words, Pennsylvania requires a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons."  <u>Id</u>.

The Third Circuit Court of Appeals has also identified a number of factors that a district court applying Pennsylvania law should apply when determining whether to apply the alter ego theory:

> failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization.

<u>Id</u>. at 333 n.7.

Beyond asserting the legal conclusion that AIG is the alter ego of National Union, Ms. McLaren's factual averments upon which that conclusion rests relate almost entirely to AIG's actions regarding Ms. McLaren's defense in the Miller litigation. Ms. McLaren's averments are not related to the above-listed factors which I must consider when determining whether AIG is the alter ego of National Union.

In <u>Partners Coffee</u>, the plaintiff moved to dismiss a counterclaim by the defendants which sought to establish liability under an alter ego theory.  The court dismissed the

counterclaim for failure to state a claim because defendants'
alter ego counterclaim simply recited the alter ego factors
"based on 'Defendants' information and belief.'" Partners Coffee,
700 F.Supp.2d at 737.

Here, in her Second Amended Complaint, Ms. McLaren
contends that AIG is National Union's alter ego because AIG is
wholly-owned by National Union and based on AIG's actions during
the Miller litigation.  The fact that AIG is wholly owned by
National Union does not establish that AIG is National Union's
alter ego.

Moreover, even if Ms. McLaren had averred, upon
information and belief, that: (1) AIG failed to observe corporate
formalities; (2) AIG did not pay dividends; (3) AIG was or is
insolvent; (4) National Union siphoned corporate funds from AIG;
(5) AIG's directors and officers were non-functioning; (6) AIG
failed to keep adequate corporate records; (7) AIG is a mere
facade for the operations of National Union; and (8) AIG is or
was grossly undercapitalized, those averments alone, without
factual averments in support, would have been insufficient to
establish a claim under an alter ego theory.  See Partners
Coffee, 700 F.Supp.2d at 737.

However, Ms. McLaren's Second Amended Complaint makes
no such averments concerning AIG's observance of corporate
formalities, its dividends, its solvency, the functioning of its

officers and directors, its corporate records, or the adequacy of its capitalization.  For these reasons, I cannot reasonable infer that AIG is the alter ego of National Union.

### Bad Faith

AIG argues that Ms. McLaren's bad faith claim must be dismissed because defendant is not an "insurer" within the meaning of 42 P.S. § 8371.  Ms. McLaren contends that her Second Amended Complaint avers sufficient facts to sustain an inference that AIG is her de facto insurer and that AIG is the alter ego of National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

Ms. McLaren does not dispute that National Union's name appears on her insurance policy as the insurer, but argues that the extent to which AIG allegedly acted as Ms. McLaren's insurer renders AIG plaintiff's insurer for purposes of section 8371.[42]

Ms. McLaren cites the Opinion of the Superior Court of Pennsylvania in Brown v. Progressive Insurance Company, 860 A.2d 493, 498-499 (Pa.Super.Ct. 2004), and the Opinion of Senior United States District Judge Maurice B. Cohill, Jr. in Chu v. Disability Reinsurance Managment Services, Inc., 2006 U.S.Dist. LEXIS 61244 (W.D.Pa. August 29, 2006), as support

---

[42]     Plaintiff's argument that AIG acted as Ms. McLaren's insurer and was Ms. McLaren's "de facto insurer" is made in support of both Ms. McLaren's bad faith claim and her breach of contract claim against AIG.  See Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 8-12.

for her argument that the Second Amended Complaint pleads facts sufficient to support an inference that AIG is McClaren's de facto insurer and is an insurer under section 8371.

In Chu, supra, Senior Judge Cohill denied a motion to dismiss filed by defendant Disability Reinsurance Managment Services, Inc. ("Disability RMS") because the plaintiffs' complaint alleged that defendant Disability RMS was the claims administrator for defendant, The United States Life insurance Company in the City of New York, and that defendant Disability RMS initially denied the benefits claimed by the insured.  Chu, 2006 U.S. Dist. LEXIS 61244, at *33.

As AIG correctly notes in its reply brief, Ms. McLaren does not allege, as the insured-plaintiff did in Chu, that AIG made any initial decision to deny benefits to Ms. McLaren under the insurance policy issued by National Union.[43]  Moreover, Chu has not been subsequently relied upon by courts for the proposition that a claims administrator constitutes an insurer under section 8371.

AIG contends that it did not act as an insurer with respect to Ms. McLaren because it did not (1) issue the policy,

---

[43]     Reply Brief of Defendant AIG Domestic Claims, Inc. in Further Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at pages 1-2.

(2) collect premiums, or (3) assume certain risks and contractual obligations with Ms. McLaren in return for the premiums.[44]

Ms. McLaren contends that each case relied upon by AIG in support of its argument that it is not an insurer under section 8371 is distinguishable from this case because of the averments in paragraph 17 of plaintiff's Second Amended Complaint, which relate to AIG's actions with respect to Ms. McLaren in the underlying Miller litigation.[45]

Although Ms. McLaren contends that the cases relied on by AIG to establish the rule for determining who is an "insurer" under section 8371 are distinguishable, Senior Judge Cohill, in his Opinion in Chu on which Ms. McLaren relies, identified -- as instances where Pennsylvania federal courts have examined the issue of who is an "insurer" under section 8371 -- five of the cases cited here by AIG. See Chu, 2006 U.S.Dist. LEXIS 61244, at *29-32.

Ultimately, Senior Judge Cohill predicted that when the Supreme Court of Pennsylvania took up the issue, it would consider, as the Superior Court did in Brown, supra, both "(1) the extent to which the company is identified as the insurer of the policy documents; and (2) the extent to which the company

---

[44]    Defendant AIG Domestic Claims, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at pages 6-8.

[45]    Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.'s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 11.

acted as an insurer." <u>Chu</u>, 2006 U.S.Dist. LEXIS 61244, at *33; <u>see</u> <u>Brand v. AXS Equitable Life Insurance Co.</u>, 2008 U.S.Dist. LEXIS 69661, at *10 (E.D.Pa. September 16, 2008)(Bartle, C.J.).

"It is the general rule that an insured may bring claims for breach of contract and bad faith against the insurer who issued the policy but not against related parties, such as reinsurers and third party administrators, who are not in privity with the insured." <u>Brand</u>, 2008 U.S. Dist. LEXIS 61244, at *5.

In evaluating whether a party is an insurer under section 8371, courts applying Pennsylvania law have stated that a party acts as an insurer when it "issues policies, collects premiums, and in exchange assumes certain risks and contractual obligations." <u>Brand</u>, 2008 U.S. Dist. LEXIS 61244, at *10-11; <u>see also</u> <u>Comcast Spectacor L.P. v. Chubb & Son, Inc.</u>, 2006 WL 2302686, at *20-21 (E.D.Pa. August 08, 2006) (Dalzell, J.)(<u>quoting</u> <u>T & N PLC v. Pennsylvania Insurance Guarantee Association</u>, 800 F.Supp. 1259, 1262-1263 (E.D.Pa. 1992) (Van Antwerpen, J.)).[46]

Here, the averments in plaintiff's Second Amended Complaint fail to plead sufficient facts to support a reasonable

---

[46]    In the <u>Comcast</u> case, my colleague, District Judge Stewart Dalzell granted defendant ASU International, Inc.'s motion to dismiss the bad faith claim against it on the grounds that it was not an insurer under section 8371. Specifically, Judge Dalzell held that because ASU International, Inc. was not listed as an insurer on the policy and did not insure the risk itself, it was not an insurer for purposes of section 8371.  Moreover, Judge Dalzell held that an evaluation of a company's actions as described by the Superior Court in Brown, supra, is unnecessary where the policy unambiguously identifies the insurer.  <u>Comcast</u>, 2006 WL 2302686, at *20-21

inference that AIG acted as Ms. McLaren's insurer within the meaning of section 8371.  Specifically, as plaintiff concedes, AIG is not identified as Ms. McLaren's insurer on the policy at issue.  Instead, National Union is identified as the insurer.[47]

Moreover, although the second prong of the <u>Brown</u> analysis -- "the extent to which the company acted as the insurer" -- is accorded "significantly more weight", <u>Brand</u>, 2008 U.S. Dist. LEXIS 61244, at *10, the fact remains that Ms. McLaren has not alleged that AIG issued the policy, collected premiums, or assumed certain risks and contractual obligations with Ms. McLaren in return for the premiums.[48]

Ms. McLaren's contention that AIG acted as her insurer is grounded in averments regarding AIG's role in the underlying Miller litigation rather than the issuance of the insurance policy, collection of premiums, or the bearing of risk by AIG.

---

[47]    Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 10; Second Amended Complaint at ¶ 10.

[48]    Rather, plaintiff contends that AIG acted as Ms. McLaren's insurer in that

> AIG received notice of the [underlying] Miller litigation directly from McLaren's insurance broker [Contemporary Insurance Services]; AIG contacted McLaren and acknowledged receipt of the lawsuit; AID determined that McLaren's Policy provided coverage for the Millers' claim and informed McLaren of same; and AIG notified McLaren that defense counsel would be appointed by AIG to represent her; and then AIG orchestrated all phases of the defense of McLaren during the Miller litigation, including the ultimate settlement which forms the basis for this litigation.

Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 11.

Therefore, the Second Amended Complaint does not aver sufficient facts to support a finding that AIG is Ms. McLaren's insurer within the meaning of section 8371 and, therefore, Ms. McLaren's bad faith claim against AIG is dismissed.

<u>Breach of Contract</u>

AIG contends that the Second Amended Complaint fails to allege a contract between AIG and Ms. McLaren and, therefore, Ms. McLaren's breach of contract claim against AIG must be dismissed.[49]  Specifically, AIG argues that the only contract plead by Ms. McLaren is the insurance contract, "which on its face denotes that National Union is the counterparty."[50]

Ms. McLaren concedes that National Union is listed as the insurer and counterparty on the insurance contract.  However, relying on <u>Chu</u>, <u>supra</u>, she argues that "an insurer who is not listed as a party to the contract itself nevertheless may be held liable under theories such as agency, alter ego, or de facto insurer."[51]

The quotation relied upon by Ms. McLaren appears in a parenthetical citation in the portion of <u>Chu</u> where Senior Judge

---

[49]     Brief of Defendant AIG Domestic Claims, Inc. In Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at page 8.

[50]     Brief of Defendant AIG Domestic Claims, Inc. In Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at page 8.

[51]     Brief of Plaintiff Andrea S. McLaren, CNM in Opposition to Defendant AIG Domestic Claims, Inc.' s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) at page 12 (citing <u>Chu</u>, <u>supra</u> (citing <u>Lockhart v. Federal Insurance Co.</u>, 1998 U.S. Dist. LEXIS 4046 (E.D.Pa. March 30, 1998)(Waldman, J.)).

Cohill discusses the issue of who constitutes an "insurer" for purposes of a bad faith claim asserted pursuant to section 8371. Importantly, <u>Chu</u> did not actually address any defendants' motion to dismiss a breach of contract claim by plaintiffs in that case. Instead, the portion of the <u>Chu</u> Opinion cited by Ms. McLaren deals with a bad faith claim under section 8371.[52]

To state a breach of contract claim, a plaintiff must aver facts sufficient to support a reasonable inference of (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.  <u>See</u> <u>Corestates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  Only a party to a contract can be liable for breach of that contract. <u>Electron Energy Corp. v. Short</u>, 408 Pa.Super. 563, 567, 597 A.2d 175, 177 (Pa. Super. Ct. 1991).

Moreover, where an insured's insurance company hires an adjuster to handle his or her claim, there is no contractual

---

[52]     In <u>Chu</u>, Senior Judge Cohill stated that "Dr. Chu has brought 'bad faith-breach of contract-declination of benefits' claims against these defendants[-- a company that provided claims administration services for an insurance company, and a physician]." <u>Chu</u>, 2006 U.S. Dist. LEXIS 61244, at *15-16. The moving defendants, a claims administration services company and the physician, sought to dismiss any bad faith claims on the grounds that neither was an "insurer" under section 8371, and any breach of contract claim on the grounds that neither was a party to a contract with plaintiffs. <u>Id.</u> at *1, 15-16.  The plaintiffs' response to the motion to dismiss any bad faith and breach of contract claims only discussed bad faith claims pursuant to section 8371.

Senior Judge Cohill only ruled on the motion to dismiss bad faith claims: "[o]ur focus is on whether Defendants are 'insurers' as that term is meant in Pa.C.S.A. § 8371". <u>Id.</u> at *16, 33-34.

- 30 -

privity between the insured and the insurance adjuster absent a separate contract between the insured and the adjuster.  See Wedemeyer v. United States Life Insurance Company, 2007 U.S.Dist. LEXIS 15742, at *52 (E.D.Pa. March 6, 2007)(Dalzell, J.).

The Second Amended Complaint does not allege that a contract existed between Ms. McLaren and AIG.  While her brief in opposition to the motion to dismiss argues AIG should be held liable as an "insurer who is not listed as a party to the contract" under theories of "agency, alter ego, or de facto insurer",[53] as discussed previously, the Second Amended Complaint is insufficient to establish a claim that AIG is Ms. McLaren's insurer under an alter ego theory or because AIG acted as Ms. McLaren's insurer.

Finally, I note that Ms. McLaren's averments in the Second Amended Complaint support a reasonable inference that an agency relationship exists between AIG, as agent, and National Union, as principal, for the provision of claims adjustment and administration services.  However, Ms. McLaren provides no authority, and I am unaware of any, supporting her implicit proposition that a party (Ms. McLaren) may sue an agent (AIG) for breach of a contract solely and expressly between the party (Ms. McLaren) and the agent's principal (National Union).  Only a

---

[53]    Plaintiff's Brief in Opposition at page 12.

party to a contract can be liable for breach of that contract. Electron Energy Corp., 408 Pa.Super. at 567, 597 A.2d at 177.

Because there is no contractual privity between AIG, as claims adjustor or administrator for National Union, and Ms. McLaren, the insured, see Wedemeyer, supra, and because Ms. McLaren has not alleged the existence of any other contract between herself and AIG, I will grant AIG's motion and dismiss her breach of contract claim against AIG.

CONCLUSION

For the reasons articulated herein, defendant's motion to dismiss is granted and plaintiff's Second Amended Complaint is dismissed.

Plaintiff's bad faith claim under section 8371 is dismissed because, although Ms. McLaren's averments support the conclusion that AIG provides claims adjustment and administrative services to National Union, AIG is not an "insurer" for purposes of section 8371.

Plaintiff's breach of contract claim is dismissed because: (a) Ms. McLaren does not allege that AIG is a party to the insurance contract between herself and National Union; (b) Ms. McLaren's averments do not support the reasonable inference that AIG is the alter ego of National Union; and (c) Ms. McLaren does not aver the existence of any other contract between her and AIG upon which her breach of contract claim is based.

For these reasons, plaintiff's Second Amended Complaint is dismissed, and for the reasons expressed in footnote 2, above, plaintiff's Second Amended Complaint is dismissed with prejudice.